## RICHARD W. GREENE *v.* JAMES MUMFORD, Collector.

### GEORGE A. SIMMONS & another *v.* SAME.

A court of equity will not, in Rhode Island, enjoin the collection of a general, or of a side-walk tax, of a town or city, on the mere ground that it has been improperly assessed against the complainant, and that his real estate has been levied upon, and is about to be sold, for its satisfaction; nor will it give remedy in such a case; the remedy at law being sufficiently adequate, and far more consonant with the scope and provisions of the tax act.

BILLS IN EQUITY, filed by the complainants, against the defendant, as collector of taxes of the city of Providence, to restrain him from collecting out of the estates of the complainants certain taxes assessed against them, upon the ground that they were illegal and void. The bill of the complainant, Greene, alleged, in substance, that the tax assessed against him, which was a tax upon his personal property amounting to $767.38, was illegal, because he was a resident in the town of Warwick, and not in the city of Providence, at the time of its assessment; and alleged, that the defendant, as collector of taxes of Provi-

dence, had notified the complainant, " that he intended to levy upon and sell at public auction the real estate of your orator, situate in said Providence, for the payment of said tax. And your orator believes, that unless restrained by this honorable court, said defendant will at once proceed to collect said sum of your orator, either by a levy on his said real estate, or in some other manner." The bill of the complainants, Simmons and another, alleged, in substance, that a side-walk tax, to the amount of $373.07, was illegally assessed against them for their lands bordering upon a portion of the Pawtucket Turnpike, which, from a want of the concurrence of all the owners of land upon it, as required by a special act of the general assembly, had never become, as the assessment assumed, one of the highways or streets of the city of Providence; and, also, on account of fatal irregularity in the assessment of the tax. The bill further alleged, that the defendant, as collector, had, under his warrant, advertised for sale the lands of the complainants, for the collection of this and other taxes. The two causes were heard together, upon general demurrers to the bills.

*Clarke*, city solicitor, in support of the demurrers :—

1st. When the law affords a complete remedy, a court of equity will not interfere by injunction. Here the remedy at law is complete.

2d. More especially, a court of equity will not interfere with a tax collector, a public officer, in the execution of his duty, where the law affords complete remedy.

3d. A court of equity cannot enjoin the collection of a tax assessed in the ordinary way, unaccompanied by circumstances of peculiar injury, even if the law authorizing the tax be unconstitutional. *McCoy* v. *Chilicothe*, 3 Ham. 380; 2 U. S. Eq. Dig. 70.

*James Tillinghast* and *R. W. Greene*, for the complainants :—

The only question intended to be raised by the demurrers is understood to be the question of jurisdiction.

1st. The restraining of public officers from the illegal or unauthorized exercise of their powers, or from the misappropriation of public moneys, is the subject of a well-settled equity jurisdiction, both in England and in this country. *Frewin* v.

40 *

*Lewis*, 4 Myl. & Cr. 254, cited in 1 Story, Eq. Jur. § 955 a ; *Bromley* v. *Smith*, 1 Sim. 8 ; *Gray* v. *Chaplin*, 2 Sim. & Stu. 267 ; *Mohawk R. R.* v. *Artcher*, 6 Paige, 83 ; *DeBaun & Thistle* v. *The Mayor, &c. of New York*, 6 Barb. 392 ; *Adriance* v. *The Same*, 1 Ib. 19 ; *Christopher & Tilton* v. *The Same*, 13 Ib. 567 ; *Cooper* v. *Alden*, Harring. Ch. 72.    And this is said, in New York, to extend to the restraining of the imposition of a tax illegally laid, which, on the authority of the above cases, is here said to be a well settled jurisdiction, in equity, in the courts of that state.    *Wood* v. *Draper*, 24 Barb. Sup. Ct. 187, 195.    There is no good reason why this jurisdiction should not equally extend to restrain the collection of a tax illegally assessed.    The remedy may often prove entirely inadequate, if not altogether wanting, at law; and it is public policy to prevent land-titles from being vitiated or clouded.

2d. But whether, or not, there is a general jurisdiction in equity to restrain the collection of the ordinary public revenue taxes, though illegal, the relief sought in the Simmons case is from a side-walk assessment, under a special act of the assembly, on the double ground, of exemption from assessment, and fatal irregularity in the proceedings of the side-walk commissioners.    It is, therefore, but restraining the corporation and its agents from the irregular and illegal exercise of special corporate powers.    The following cases in Ohio are directly in point : *Burnet* v. *Cincinnati*, 3 Ham. 72 ; *Culberston* v. *Cincinnati*, 16 Ohio, 579.

Ames, C. J.    These are applications to us, as a court of equity, to enjoin the collector of taxes of Providence from collecting of the complainant, in one case, a tax upon his personal property, and of the complainants in the other, a side-walk tax, solely, upon the ground, that the taxes have been illegally assessed, and are therefore void.    They pretend no special equities as grounds for relief, but proceed upon the general notion, that wherever a public officer is about to act to the injury of another, or at least, to sell his real estate, under a void authority, a court of equity will enjoin the act, on account of the greater justice which is done by preventing, than by afterwards remedying the wrong.

We do not understand that courts of equity take jurisdiction and enjoin upon any such loose and general notions; which, if carried out, would take a vast number of cases, turning upon legal rights only, out of the course of the common law, and subject them to the peculiar practice and mode of trial of the chancery.  Certainly, it is not the mere fact that a public officer is attempting to exercise a void authority, which induces a court of equity to restrain him; but, notwithstanding he is a public officer, that he is about, by such exercise, to do an act which brings the case within its peculiar jurisdiction; for example, an act in breach of trust, in derogation of a contract which ought to be specifically performed, or an act of irreparable mischief to the real estate of another.  The jurisdiction is thus explained by Lord Cottenham, in *Attorney-General* v. *Forbes*, 2 M. & C. 123, 130–135, in application to a public nuisance about to be committed under an order of the quarter sessions of the county of Berks; the authority of the magistrates being objected to the interference of the court.  It is true, that in *Frewin* v. *Lewis*, 4 M. & C. 249, S. C. 9 Sim. 6, in which he was asked to enjoin the poor-law commissioners from exercising certain powers over property which were claimed to be unauthorized, his language is more general, but the notion conveyed is nevertheless the same; and that is, that if public functionaries assume a power over property which the law does not give them, a court of chancery no longer considers them as acting under the authority of their commission, but treats them, whether they be a corporation or individuals, merely as persons dealing with property without legal authority.  See also Adams, Eq. 212, and cases cited.

Treating then the tax collector in these cases, so far as he acts without authority, as a person about to commit an illegal act, what ground is there for the interference of this court, considering the nature and consequences of the act which he proposes to do.  If, by any act done under his warrant, the collector exceed its precept, he is a trespasser, and liable as such. If the tax is illegal and void, and is extorted from the person rated by the duress of the collector's warrant, it may be recovered back, with interest, in assumpsit, from the city; or, if the taxpayer choose, he may allow the collector to proceed under his

warrant, and treat the assessors who issued it as trespassers, and recover of them all damages done to him in person or property under it. Pursuing these remedies, which seem quite adequate, the questions of law which arise in such a case are cheaply decided, as they should be, by a court of law, and the questions of fact, as *they* should be, by the verdict of a jury.

It is said, however, that if the collector is allowed to sell the real estate of the complainants for illegal taxes, they run the risk of losing their land sold, and at all events, a cloud is cast, as the common phrase is, upon their titles to it; and it is true, that the cases of *Van Rensallaer* v. *Kidd*, 4 Barb. Sup. Ct. R. 17; *Livingston* v. *Hollenbeck*, Ib. 9; *Sayre* v. *Tompkins*, 23 Missou. (2 Jones,) 443, and *Lockwood* v. *St. Louis*, 24 Ib. 20, although they deny the propriety of the interference of a court of equity with the collection of a void tax when the person or personal property only is proceeded against, seem to admit it when such a tax is attempted to be levied upon the real estate of the person illegally rated.

Looking at our system of tax laws, we do not see the force of this distinction. The cloud upon title cast by a sale under a void tax, is too easily dispelled to occasion injury, or even serious embarrassment; and the risk run by a person who deems himself illegally taxed, if the sale is allowed to proceed, is too small, in comparison with the evils of such interference, to justify a court of equity, without special grounds, in enjoining the sale. If the tax be really void, the title is not affected by the sale made to satisfy it; and if the rated person does not like to run the risk of its being void, he can pay it in relief of his land, and, if successful in showing its invalidity, recover it back, with interest, in an action of assumpsit. But if such payment be, from any cause, inconvenient, the risk he runs is reduced by our statute to this, that in the event he is mistaken as to the invalidity of the tax, he, " his heirs, assigns, or devisees" will be obliged to redeem the land sold " upon repaying to the purchaser the amount paid therefor, with twenty per cent. in addition, within one year after the sale, *or within six months after final judgment has been rendered in any suit in which the validity of the sale is in question, provided said suit be com-*

*menced within one year after such sale.*" Rev. Stats. ch. 40, §§ 16, 17, p. 111.   If we take into consideration, that, by the 11th section of the same chapter of the Revised Statutes, "so much" only of the land liable to taxes is to be sold by the collector "as is necessary to pay the tax, interest, costs, and expenses," it is seen, that the cloud upon title cast by a tax sale may, in the worst event for the tax payer, be dispelled by redemption, at a far easier rate than by the additional expenses of a suit in equity over those of a suit at law, especially if, as would be the strict course where a mere legal right was in question, disputed facts were to be settled by verdict, upon an issue directed to a court of law.

On the other hand, if we sustain such bills as these, what must be the consequence?   Constant application to this court to enjoin collectors of taxes, upon the ground of illegal assessment, at great expense, and with great vexation and delay, in a class of cases too in which the law, from motives of public convenience, not to say necessity, has studiously made the ordinary proceedings as short, as simple, as cheap, and effectual as possible.   It has been argued to us indeed, that because no special remedy is provided by statute for cases of illegal and void assessment, we should adopt this, though the most expensive and dilatory.   We do not feel the force of the argument, considering the opposite scope of the general policy, and the minute provisions of, our tax laws.   In case of a petition by way of appeal from an over-valuation of the rated estate of a tax payer, the 11th section of ch. 39 of the Revised Statutes expressly provides, that "no such petition shall, before judgment, stay any proceedings for collecting the tax."   Still less are we, before judgment at law, as has been done in one of these cases, to stay the collection of a tax upon the ground that it may have been illegally assessed, and by entertaining, in this form, mere questions of law, unnecessarily to substitute, in effect, the most cumbrous and expensive, for the most cheap and expeditious mode of collecting taxes, to the great burden of tax payers and collectors of taxes, and to the great inconvenience of the public.

Nor do we feel the force of the distinction attempted, upon the

Ohio cases, between equitable interference in case of a general, and, in case of a special, town or city tax. Both derive their authority from the same source, and are necessary, in legal presumption, for proper municipal police. Though assessed in a different mode, and upon a different principle, and by a different set of officers, both are ultimately collected in the same manner; nor do we see how the threatened sale, or sale, of his real estate, for the collection of the one, can be more injurious to the person illegally assessed, than for the collection of the other. As we have seen, a court of equity, in considering whether it shall interfere with the illegal acts of public officers, or *quasi* public officers, over property, does not look to the special mode in which their authority is conferred; since, so far as they exceed their commission, it treats them as. persons dealing with property without any authority whatsoever. It looks only to the nature and consequences of their illegal acts done, or proposed to be done; and in view of the sufficiency of legal remedies for a mere legal wrong, balances the advantages against the disadvantages of its interfering by its extraordinary power of injunction. If it is clear that more harm than good will be done, in a novel case, by such interference, it will stay, and ought to stay, its hand: not denying remedy, but leaving the injured party to his remedy at the common law. Judging by these tests, we can see no more propriety for our enjoining the collection of a side-walk tax, than of a general tax.

In conclusion, although we will not say, that in no case that may occur will we, as a court of equity, stay the collection of an illegal town or city tax, yet we do say, that we will not do it as against a single tax payer, upon the mere ground that it is illegally assessed upon *him*, without special equities, and when, as in the cases before us, the law affords a far better and more appropriate remedy, in view of his rights and necessities and those of the public, than any which we, on this side of the court, can administer.

*The demurrers must be sustained, and the bills dismissed, with costs.*