This application is, in effect, a demand by the prosecutor thatall the bank accounts of all the members of the Newark police department and, in some instances, those of their wives, be submitted to him for examination. The only reason given is "to assist him in some investigation he is making." Presumably, he thinks there may have been in some instances improper reception of money.
The prosecutor contends that a court of equity has no jurisdiction because it cannot enjoin a public official, stating that this court cannot stay or interfere with a criminal proceeding. In the first place, this statement is too broad, for the courts have held that under certain circumstances this may be done in criminal cases. In Ex Parte Young, 209 U.S. 123;52 L.Ed. 715 (to cite but one), the United States supreme court said, after citing numerous cases: "These cases show that a court of equity is not always precluded from granting an injunction to stay proceedings in criminal cases." In the second place, it has no bearing on the matter now before me because the application is not to enjoin criminal proceedings but to enjoin the prosecutor, acting under color of authority, from violating property rights claimed by the complainants.
The court of chancery will not interfere with public officials unless they are acting without authority or property rights are involved. *Page 388 
The rule is probably best expressed in the language of Chief-Justice Ames in Greene v. Mumford, 5 R.I. 472, quoted in People v. Canal Board of New York, 55 N.Y. 390, as appears on page 11 of the prosecutor's brief, as follows:
"Ch. J. Ames, in Greene v. Mumford, 5 R.I. 472, states the rule by which courts of equity are governed in the exercise ofjurisdiction over public officers, whether acting individually or as members of a public board or body organized according to law. He says, `certainly, it is not the mere fact that a public officer is attempting to exercise a void authority which induces a court of equity to restrain him; but, notwithstanding he is a public officer, that he is a public officer, that he is about, by such exercise, to do an act which brings the case within its peculiar jurisdiction; for example, an act in breachof trust, in derogation of a contract which ought to be specifically performed, or an act of irreparable mischief to thereal estate of another.'"
And the New York court proceeds:
"A court of equity exercises its peculiar jurisdiction overpublic officers to control their action only to prevent a breachof trust affecting public franchises, or some illegal act undercolor or claim of right affecting injuriously the property rightsof individuals."
And the general rule is stated in 32 Corp. Jur. tit."Injunctions" § 383, as follows:
"Courts of equity have no power to restrain public officers by injunction from performing any official act which they are by law required to perform, or acts which are not in excess of theauthority and discretion reposed in them. Nevertheless it is arule of very general application that, where public officers areacting in breach of trust, or unlawfully or without authority orthreatening to do so, and such acts will result in irreparableinjury, or will require a multiplicity of suits at law, to obtainredress, they may be enjoined. This is, it has been held, not an action or suit against the state. This rule, of course, applies whether the acts complained of operate to the prejudice of the public, or to the injury of rights of individuals *Page 389 
or corporations. Nevertheless, an injunction will not be granted where the injury is slight, or doubtful, or where on the facts the right to the injunction is doubtful, or where there is an adequate remedy at law against the officers whom it is claimed are acting illegally or threatening to do so. And mere apprehension of unauthorized acts by public officers will not authorize the issuance of an injunction; and even where the right to an injunction might otherwise exist, the court may properly refuse it by reason of plaintiff's acquiescence in the acts complained of, or because of acts raising an estoppel against him."
In Royal Baking Powder Co. v. Emerson (Circuit Court ofAppeals for the 8th Circuit), 270 Fed. Rep. 429, a suit was brought in equity to enjoin the prosecutor of the pleas from proceeding against the Royal Baking Powder Company for violation of a state statute. The circuit court of appeals said (at p.432):
"It is true that the general rule is that courts of equity will not enjoin criminal prosecutions. The exception is that where property rights are involved, and it is claimed seriously and in good faith that the act of the prosecutor is not authorized by law, equity can act. Hebe Co. v. Shaw, 248 U.S. 297;39 Sup. Ct. 125; 63 L.Ed. 255; Greene v. Louisville, c., Railroad Co.,244 U.S. 499, 506, 507; 37 Sup. Ct. 673; 61 L.Ed. 1280; Ann. Cas.1917 E 88; Truax v. Raich, 239 U.S. 33, 37; 36 Sup. Ct. 7;60 L.Ed. 131; L.R.A. 1916 D 545; Ann. Cas. 1917 B 283; Western UnionTelegraph Co. v. Andrews, 216 U.S. 165; 30 Sup. Ct. 286;54 L.Ed. 430; Ex Parte Young, 209 U.S. 123; 28 Sup. Ct. 441;52 L.Ed. 714; 13 L.R.A. (N.S.) 932; 14 Ann. Cas. 764. This lack of legal authority may arise because the act is within an invalid statute, or because it is not authorized by a valid statute. Ineither case the act is without legal sanction, is not protectedby the official status of the prosecutor, and can be restrained.
The complaint alleges a multiplicity of threatened prosecutions, and irreparable injury thereby through destruction of a valuable good will in an established *Page 390 
trade brand; that such prosecutions are arbitrary, capricious and unreasonable, and therefore not within nor authorized by the state statutes, but violative of appellant's rights, under amendment 14, section 8, of article 1, and article 6 of the national constitution. These contentions are apparently urged seriously and in good faith. They support the jurisdiction ofthe court."
The question then arises: Are there property rights involved in this application? Can the prosecutor inspect these bank accounts for purposes he declines to disclose? It may be that the relation of a bank to its depositors is that of debtor and creditor, but I think it is more than that. As far as the money actually deposited is concerned, that is true. But as to the records of the accounts, the deposits and withdrawals, that is another matter. There is an implied obligation, as I see it, on the bank, to keep these from scrutiny until compelled by a court of competent jurisdiction to do otherwise. The information contained in the records is certainly a property right.
Mr. Justice Field, afterwards justice of the United States supreme court, in the matter of the application of the In rePacific Railway Commission, 32 Fed. Rep. 241 (at p. 250), said:
"Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves not merely protection of his person from assault, but exemption of hisprivate affairs, books and papers from the inspection andscrutiny of others. Without the enjoyment of this right, allother rights would lose half their value."
And in Federal Trade Commission v. American Tobacco Co.,264 U.S. 298; 68 L.Ed. 696, Mr. Justice Holmes, speaking for a unanimous court, said:
"Anyone who respects the spirit as well as the letter of the fourth amendment would be loath to believe that congress intended to authorize one of its subordinate agencies to sweep all ourtraditions into the fire (Interstate Commerce Commission v.Brimson, 154 U.S. 447, 479), and to direct fishing *Page 391 
expeditions into private papers on the possibility that they maydisclose evidence of crime."
And, again, Mr. Justice Field, in the matter of the application of the In re Pacific Railway Commission, 32 Fed. Rep. 241 (atp. 253), after referring to Kilbourn v. Thompson,103 U.S. 168; 26 L.Ed. 377, said:
"This case will stand for all time as a bulwark against the invasion of the right of the citizen to protection in his private affairs against the unlimited scrutiny of investigation by a congressional committee."
I therefore will advise a decree refusing to strike out the bill. If the prosecutor has before him any evidence that any man connected with the department has improperly collected money, his course should be to present the facts to the grand jury, and if in its opinion an investigation should be made, subpoenaes can be issued in the regular way, calling for such accounts as the grand jury may think necessary to review in the privacy of its deliberations. Should the accounts prove correct, they can be returned to the banks without publicity. If wrong-doing be indicated, an indictment can be returned and the case can proceed in the usual manner, under the direction of the judge presiding at the trial.
It seems to me, however, a great mistake to make such a sweeping charge against an entire class of men because of a suspicion that a few of them may have done wrong. I have had personal experience with police officers. When I was secretary of the Essex county park commission I had charge of its police department. The officers were and still are, I am sure, fine men who faithfully perform their duty. I have knowledge also of the Newark police. The same comment applies to them. As a body they are honorable, straightforward, and their duty is well done. Among such a large number it may be that there are those who do not measure up to the required standard. This is true, alas, of any large body of men that may be mentioned — lawyers or doctors or any other class considered as a class. Does the prosecutor think because, as is well known, some members of both professions *Page 392 
have been guilty of infractions of law that he has the right to investigate the private affairs of every doctor and lawyer? It is most unfair to condemn the whole on account of the alleged delinquencies of the few.
Moreover, when we consider the matter from the standpoint of the banks, we are confronted with this situation: If the prosecutor can inspect the accounts of all policemen and their wives, what is to prevent him from making any investigation into any account of other individuals or classes which it may strike his fancy to delve into? The right of personal privacy would be gone and the public would lose confidence in the institutions to which they entrusted their assets.
I cannot think that the prosecutor has any such power except as I have said in a specific case where a grand jury itself calls for such information.
The prosecutor also contends that there is no irreparable injury at stake, and that there is a remedy at law. It is quite apparent to me that there is an irreparable injury because it is an attempt to take away a right, of which Mr. Justice Field said in the In re Pacific Railway Case, cited above, "without the enjoyment of this right [privacy] all other rights would lose half their value."
Neither is there an adequate remedy at law. A suit for damages might lie, but after the information is disclosed, how can complainants know what injury they have suffered, and how can the damages be accurately measured? Equity will act where there is a remedy at law if the remedy is inadequate.
I will advise a continuance of the restraint. *Page 393