952 A.2d 479 (2008)
401 N.J. Super. 573
Stephanie M. HIRL, a minor, by her guardian ad litem, Suzanne HIRL, Plaintiff-Respondent,
v.
BANK OF AMERICA, N.A., Defendant-Appellant.
Suzanne F. Hirl, Plaintiff-Respondent,
v.
Bank of America, N.A., Defendant-Appellant.
No. A-6459-06T1
Superior Court of New Jersey, Appellate Division.
Argued April 30, 2008.
Decided July 21, 2008.
Michael T. Collins argued the cause for appellant (Sodina & Spina, LLC, attorneys; Daniel Barros, on the briefs).
*481 Edward M. Thompson, Atlantic City, argued the cause for respondents (Callaghan, Thompson & Thompson, P.A., attorneys; Mr. Thompson, on the brief).
Before Judges CUFF, LISA and LIHOTZ.
The opinion of the court was delivered by
CUFF, P.J.A.D.
Following a bench trial, the trial judge entered judgment in favor of plaintiff Stephanie Hirl in the amount of $2,500, in favor of plaintiff Suzanne Hirl in the amount of $2,450, plus attorneys' fees in the amount of $3,420. Defendant Bank of America (BOA) argues that the judgment is predicated on erroneous evidential rulings, and that there was an absence of evidence to support a finding of embarrassment or reckless behavior by it. We reverse and remand for further proceedings consistent with this opinion.
Hirl[1] filed a complaint seeking compensatory and punitive damages following the production of her bank records by BOA in response to a facially valid subpoena. She filed a similar complaint on behalf of her minor daughter, Stephanie. The facts leading to the production of plaintiffs' bank records are undisputed. The effect of the production and publication of the information contained in those records and any remedy that may be afforded to plaintiffs is at the heart of this appeal.
It is undisputed that Hirl and her former husband had an ongoing dispute regarding support payable by the former husband. On June 29, 2006, a facially valid subpoena in a matrimonial action was served on BOA. It requested production on July 10, 2006, of the following documents:
Copies of bank statements with check views if applicable, deposit tickets and sources of deposits for August 2005 through June 2006, for Shore Points Taxi, Inc., Suzanne Hirl Malouf or any trade name, social security number . . . C & C Cab, or Shore Points Limo, and any checking or savings accounts statement for the same time period on deposit in the name of such parties.
The subpoena informed BOA that "the subpoenaed evidence shall not be produced or released until July 10, 2006." The subpoena also notified the recipient that it must not produce the subpoenaed information, if notified that a motion to quash the subpoena had been filed. The subpoena also informed the recipient that an appearance was not required if the documents were delivered prior to July 10.
By letter dated June 29, 2006, an attorney representing Hirl informed BOA that she had received a copy of the subpoena, and stated "I am filing a motion to quash that Subpoena." On July 6, 2006, BOA delivered documents in response to the subpoena that included a checking account for Hirl, a savings account in the name of her daughter Stephanie, and savings accounts for her three other children. The children, other than Stephanie, are also the children of the party requesting the bank records.
On July 10, 2006, Hirl's attorney filed a motion to quash the subpoena. A copy of that motion was not served on BOA. On July 21, 2006, a judge granted the motion to quash the subpoena and an order to quash was entered July 26, 2006. By correspondence dated July 24, 2006, BOA was notified that a motion to quash had been filed and granted. BOA received *482 a copy of the order quashing the subpoena by correspondence dated July 28, 2006.[2]
At trial, Hirl testified over the objection of BOA that she learned from comments by friends and acquaintances that the bank records had been turned over by BOA to the attorney for her former husband. She also acknowledged that her attorney informed her of the turnover of the bank records, and her local BOA branch confirmed the turnover. Again over the objection of BOA, Hirl testified that her former husband "interrogated" her about checks she had written on her checking account. Hirl testified that she felt "violated." She stated, "I had to look over my shoulder to find if he was, what he was planning to do to me next, take me back to court, lower child support, [or] try to take my daughter. . . ." Hirl noted that she and her former husband were involved in a post-judgment matrimonial dispute about the amount of his child support obligation. She also testified that her former husband hired a private investigator to gather information about the financial condition of Stephanie, her daughter from a former marriage.
In reaction to the turnover of her bank records, Hirl testified that she closed her accounts at BOA, opened an account at a smaller local bank, and avoids depositing most of her earnings in a bank. She bought a safe for her money and installed a security system in her home.
Hirl also testified that she suffered great embarrassment due to the actions of BOA because people knew what had occurred. She related that her former husband told people that he had obtained copies of her checks and stated that he was "going to do her in now."
Hirl testified that Stephanie, twelve years old at the time of trial, refused to allow her mother to deposit any monetary gifts in a bank account. Her daughter insisted that the money be kept in the safe purchased by Hirl.
The trial judge found that BOA violated the Electronic Fund Transfer Privacy Act (EFTPA), N.J.S.A. 17:16K-1 to -6, and that violation allowed him to award compensatory and punitive damages and attorneys' fees. The judge found that Hirl's attorney notified BOA not to release information sought by the subpoena. He acknowledged that plaintiff's attorney simply informed BOA of her intent to file a motion to quash the subpoena, but noted that the distinction did not assist BOA in avoiding liability because it is a well-established, well-informed, and well-counseled financial institution. He found that BOA violated "not only the spirit but a fair reading of their responsibilities under this subpoena by releasing the information until they had a court order or until they had a consent to do so from both parties. So . . . the bank is in violation of . . . [N.J.S.A.] 17:16K-3."
The trial judge proceeded to address damages focusing first on Stephanie. The judge found that release of information on the account held by Hirl, as guardian *483 for her daughter Stephanie, was a reckless violation of N.J.S.A. 17:16K-6, and the violation warranted punitive damages in the amount of $2,500.
The judge also found that Hirl's rights were violated, and she was entitled to compensatory damages in the amount of $450. The judge did not allow compensation for the installation of the home security system. He allowed the costs incurred to change bank accounts and to acquire a safe to store funds. He found these expenses were reasonably related to the wrongful actions of BOA. Furthermore, the judge found that Hirl was embarrassed and humiliated and awarded her damages of $2,000. He also found that Stephanie was entitled to attorney's fees of $3,420.
On appeal, BOA argues that the trial judge erred by allowing the admission of hearsay in support of Hirl's claim that BOA's action embarrassed her and that the evidence did not support an award of compensatory damages for any embarrassment suffered by her. BOA also contends the record does not support that its action concerning Stephanie's bank records was reckless or that punitive damages should have been awarded to her. BOA also argues that the trial court erred by admitting evidence of out-of-pocket expenses incurred by Hirl.
In their complaints, plaintiffs asserted a right to privacy for their financial records without identifying the source of that right or the compensatory and punitive damages they sought. The existence of a right to privacy to financial records is the threshold issue in this case. Then, we address the remedies available to a depositor whose records are disclosed contrary to law.
In 1978, Congress enacted the Right to Financial Privacy Act of 1978, 12 U.S.C.A. §§ 3401-3422. It prohibits access to the financial records of any customer of a financial institution by any agency or department of the United States or any of their officers, employees, or agents, unless the disclosure was authorized by the customer, or was made in response to an administrative subpoena or summons, a search warrant, judicial subpoena, or formal written request. 12 U.S.C.A. § 3402. It does not address access to or release of financial information of a customer of a financial institution by non-governmental parties. Other states have enacted statutes that recognize a reasonable expectation of privacy in bank records. Michael Rogovin, Privacy of Financial Records, 1986 Ann. Surv. Am. L. 587, 601 (1986). In doing so, these states recognize that such information may be helpful or necessary for law enforcement purposes. Ibid.
This State has long recognized that a financial institution has an obligation to keep private the records of accounts maintained by depositors unless compelled by a court order or valid subpoena to disclose the information. Brex v. Smith, 104 N.J. Eq. 386, 390, 146 A. 34 (Ch.1929); see Twiss v. State, Dep't. of Treasury, 124 N.J. 461, 474, 591 A.2d 913 (1991) (recognizing the right to confidentiality of bank records); Roth v. First Nat'l State Bank of N.J., 169 N.J.Super. 280, 284, 404 A.2d 1182 (App.Div.) (same), certif. denied, 81 N.J. 338, 407 A.2d 1212 (1979). See also In re Addonizio, 53 N.J. 107, 133, 248 A.2d 531 (1968) (recognizing contractual obligation to keep bank records confidential but also the obligation to comply with subpoena). In fact, Brex represents the first judicial opinion in this country to address the confidentiality of bank records. Twiss, supra, 124 N.J. at 474, 591 A.2d 913 (citing Rogovin, supra, 1986 Ann. Surv. Am. L. at 594).
The expectation of privacy between a customer and a financial institution was *484 initially grounded in an implied or express contractual obligation to protect the personal information of depositors. Rogovin, supra, 1986 Ann. Surv. Am. L. at 594-97; see Brex, supra, 104 N.J. Eq. at 390, 146 A. 34 (referencing bank's implied obligation to keep records confidential). Recently, the Supreme Court of New Jersey held that the New Jersey Constitution recognizes an account holder's interest in the privacy of his or her bank records and limits government access to bank records. State v. McAllister, 184 N.J. 17, 32-33, 875 A.2d 866 (2005).
Having found that an account holder possesses an expectation of privacy of his or her bank records, the issue before us is the remedy for a negligent, reckless or intentional violation of that right. The trial judge found that N.J.S.A. 17:16K-6 authorized the imposition of compensatory and punitive damages, costs of suit and reasonable attorneys' fees.
N.J.S.A. 17:16K-6 is part of the EFTPA. Enacted in 1983, the EFTPA prescribes who can provide or obtain information concerning an electronic fund transfer or electronic fund transfer account and under what circumstances that information can be disclosed. The EFTPA appears to accept the invitation of the federal Electronic Fund Transfer Act (EFTA), 15 U.S.C.A. §§ 1693-1693r, to prescribe additional protections for consumers that do not conflict with the protections afforded by the federal legislation. 15 U.S.C.A. § 1693q. Indeed, the EFTPA focuses only on the circumstances when a financial institution may disclose information relative to an electronic fund transfer or account to a third party, N.J.S.A. 17:16K-3; the requirement for government agencies to obtain a search warrant for information from an electronic fund transfer account, N.J.S.A. 17:16K-4; the circumstances under which a government agency may intercept an electronic fund transfer, N.J.S.A. 17-16K-5; and the remedies for negligent, willful or reckless violation of the act by a financial institution or government agency, N.J.S.A. 17:16K-6.
N.J.S.A. 17:16K-3 directs that a financial institution may disclose information relative to an electronic fund transfer or account in six circumstances. Although compliance with a subpoena duces tecum issued in relation to civil litigation is not an enumerated circumstance for disclosure, neither party argues that BOA could fail to respond to the facially valid subpoena issued by the attorney representing Hirl's former husband. The issues before us are whether N.J.S.A. 17:16K-6 provides a remedy to either plaintiff, and if so whether BOA negligently, recklessly or willfully disclosed financial information.
Whether N.J.S.A. 17:16K-6 authorizes an award of damages and attorneys' fees to either plaintiff requires a determination whether the EFTPA applies to the disclosure of information in all accounts maintained in a financial institution or only to the disclosure of certain information concerning electronic fund transfers. On its face, the statute seems to afford a remedy only for unauthorized disclosure of information by a financial institution or government agency contained in electronic fund transfers; yet the wording of certain sections of the EFTPA suggests that it may have broader effect. As noted, N.J.S.A. 17:16K-3 provides that "[a] financial institution may disclose information relative to an electronic fund transfer or account to a third party . . ." under certain circumstances. N.J.S.A. 17:16K-4 requires a government agency to obtain a search warrant or subpoena for information from an electronic fund transfer account. N.J.S.A. 17:16K-5 requires a government agency to obtain a court order to intercept an electronic fund transfer.
*485 The EFTPA defines "account" and "electronic fund transfer." It does not define an electronic fund transfer account. The definition of account is broad and includes "a demand, time, or savings deposit, or other consumer asset account, other than an occasional or incidental credit balance, held either directly or indirectly by a financial institution and established for personal, family or household purposes." N.J.S.A. 17:16K-2b. The issue then is whether this statute applies only to electronic fund transfers and electronic fund transfer accounts or includes all ordinary consumer accounts maintained by consumers at a financial institution.
This ambiguity is resolved somewhat by the text and the legislative history of the statute. The statute is self-described in its title as "[a]n Act restricting the disclosure of certain information contained in electronic fund transfers." L. 1983, c. 466. We recognize, however, that we may place limited reliance on the title of any piece of legislation. See Howard Sav. Inst. v. Kielb, 38 N.J. 186, 201, 183 A.2d 401 (1962) (stating "the title to an act is not an index, merely a label, and thus the title should not be scrutinized with an overly technical eye.").
Committee statements and the Governor's conditional veto message suggest that the act was not designed to encompass every consumer account. A statement accompanying the bill when first introduced stated that the purpose of the legislation was to "statutorily prescribe [] who can provide or obtain and under what circumstances information concerning an electronic fund transfer . . . account." Assembly Banking and Insurance Committee, Statement to A. 832 (June 14, 1982). Following the addition of amendments by the Senate, a Senate committee statement described the purpose of the bill as to "statutorily prescribe [] who can provide or obtain and under what circumstances information concerning an electronic fund transfer or electronic fund transfer account." Senate Labor, Industry and Professions, Committee, Statement to A. 832 (April 25, 1983). Governor Kean's conditional veto message similarly described the purpose of the legislation. Governor's Veto Statement to A. 832 (Sept. 6, 1983).[3] While these statements are far from definitive, statements of purpose and limitation of legislation should not be ignored. See Szabo v. N.J. State Firemen's Ass'n, 230 N.J.Super. 265, 287 n. 17, 553 A.2d 371 (1988) (noting that it is customary and appropriate to look to references to statements of purpose or similar collateral sources to determine the limits of a statute's delegated authority). Thus, these statements suggest that the EFTPA was intended to cover only electronic fund transfers and consumer accounts that are electronic fund transfer accounts.
We have located no opinion that discusses this issue. In fact, we have discovered no opinion addressing any section of this statute. We have located several opinions addressing the federal EFTA statute.[4] We refer to two of these opinions because the definition of account in the federal statute is similar, but not identical, to the definition contained in the statute under review and the federal legislation was *486 designed to outline individual consumer rights in the context of this type of financial transaction. 15 U.S.C.A. § 1693(b).
15 U.S.C.A. § 1693a(2) defines "account" as "a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open credit plan . . . [) ] established primarily for personal, family, or household purposes. . . ." Two cases have held that the federal act is implicated when a consumer establishes a checking or savings account that has electronic fund transfer capability. Cobb v. Monarch Fin. Corp., 913 F.Supp. 1164, 1174-75 (N.D.Ill.1995); Spain v. Union Trust Co. 674 F.Supp. 1496, 1501 (D.Conn.1987). If the account qualifies under the EFTA, then the financial institution is required to disclose to the consumer the circumstances under which the financial institution will in the ordinary course of business disclose information in the customer's account to third parties. 15 U.S.C.A. § 1693c(a); 12 C.F.R. § 205.7(b)(9).
The EFTPA is remedial legislation that should be construed liberally to effectuate its purpose to protect consumers. See Maglies v. Estate of Guy, 193 N.J. 108, 123, 936 A.2d 414 (2007) ("`Remedial statutes are liberally construed to suppress the evil and advance the remedy.'") (quoting 3 Norman J. Singer, Sutherland Statutory Construction, § 60:1 at 183 (6th ed.2001)). The interpretation afforded the federal statute that applies its protection to any account with electronic fund transfer capacity appears to us to be a sensible interpretation of the language in this State's statute regarding electronic fund transfers. That is, a financial institution may disclose information to a third party as prescribed by the statute relative to an electronic fund transfer or an account with electronic fund transfer capability as elected by the consumer. On the other hand, if information pertaining to such an account is improperly disclosed, the consumer may invoke the remedies provided by the EFTPA.
As applied to this case, we must reverse the judgments entered in favor of Hirl and her daughter and remand for further proceedings. In order to invoke the remedial provisions of the EFTPA, plaintiffs must establish that the accounts maintained by Hirl and her daughter at BOA were qualifying accounts. If plaintiffs are able to establish that they maintained qualifying accounts, they are entitled to the compensatory damages, punitive damages, and attorneys' fees previously awarded.
Our review of the facts of record convinces us that BOA acted negligently as to Hirl as found by the trial judge, and recklessly as to Stephanie, in releasing the bank records. In doing so, we accept, as we must, the facts as found by the trial judge. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). We are not required to accept or defer to the application of the law to the facts as found by the trial judge. Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549, 803 A.2d 53 (2002); Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Here, Hirl's attorney notified BOA that she intended to file a notice to quash the subpoena. Despite this notice, BOA released the subpoenaed information two days before it was required to produce the information. BOA's insistence that it cannot be considered negligent because it followed the suggestion contained in the subpoena to produce the information before the due date is unavailing. It received the notice of the intent to file a motion to quash, and this court ruled six years earlier in Cavallaro, supra, that language suggesting earlier production was improper. *487 334 N.J.Super. at 566-68, 760 A.2d 353. The result may have been different if BOA had produced the subpoenaed information on the due date after having only received a notice of an intention to file a motion to quash the subpoena. That case, however, is not before us.
We also conclude that BOA acted recklessly in releasing financial records of Stephanie. This account was created pursuant to the New Jersey Uniform Gift to Minors Act, N.J.S.A. 46:38-13 to -41.[5] Hirl's connection to this account was solely as a custodian for her minor daughter. The generous interpretation afforded the subpoena by BOA personnel is contrary to the plain meaning of the language of the subpoena and the title of the account.
Reckless behavior is characterized by an intentional act that is done "in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow." Schick v. Ferolito, 167 N.J. 7, 19, 767 A.2d 962 (2001) (citing Prosser & Keeton on the Law of Torts § 34 at 212 (5th ed.1984)); Dunlea v. Twp. of Belleville, 349 N.J.Super. 506, 512, 793 A.2d 888 (App.Div.), certif. denied, 174 N.J. 189, 803 A.2d 1161 (2002). The evidence adduced at trial regarding the release of Stephanie's account rises to this level. Thus, if Stephanie's custodial account is a qualifying account, she is entitled to recover the punitive damages awarded by the trial judge.
BOA's arguments regarding the evidential basis for the compensatory damage award are without merit. It is of no consequence that the documents reflecting the expenses incurred to open new accounts and to purchase a safe were not produced prior to trial. BOA never requested Hirl to do so. Similarly, evidence of the embarrassment she suffered has no relevance to the limited damages awarded to her.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.
NOTES
[1] All references to Hirl are to Suzanne Hirl. Stephanie Hirl did not testify.
[2] The issuance of subpoenas is governed by Rule 4:14-7 and is strictly limited. Welch v. Welch, 401 N.J.Super. 438, ___, 951 A.2d 248 (Ch. Div.2008). "[A] `discovery' subpoena may be issued only in connection with a scheduled deposition of the subpoenaed person." Ibid. Moreover, the inclusion of language that suggests that documents should be produced prior to the return date is improper. Cavallaro v. Jamco Prop. Mgmt., 334 N.J.Super. 557, 566-68, 760 A.2d 353 (App.Div. 2000). Subpoenas duces tecum issued without prior court authorization for purposes of discovery prior to initiation of a post-judgment proceeding are prohibited. See Welch, supra, 401 N.J.Super. at ___, 951 A.2d 248 (finding that documents procured through subpoena duces tecum served two days prior to filing of post-judgment matrimonial motion was improper).
[3] The bill as enacted included the amendments sought by Governor Kean.
[4] Kashanchi v. Texas Commerce Medical Bank, 703 F.2d 936, 942 (5th Cir.1983), held that the EFTA does not apply to transfers initiated by phone. Vigneri v. U.S. Bank National Ass'n, 437 F.Supp.2d 1063, 1065-66 (D.Neb.2006), concerned the application of the EFTA to a transaction initiated by a paper draft. The court held it did not apply. Id. at 1068. Neither case discusses the issue presented in this appeal.
[5] This Act was repealed and replaced by the New Jersey Uniform Transfer to Minors Act, N.J.S.A. 46:38A-1 to -57, in 1987.