774 A.2d 585 (2001)
340 N.J. Super. 319
Bret SCHUNDLER, Plaintiff-Appellant,
v.
Glenn R. PAULSEN, George R. Gilmore, Richard H. Bagger, Deforest B. Soaries, New Jersey Secretary of State, Michael J. Garvin, Atlantic County Clerk, Kathleen A. Donovan, Bergen County Clerk, Phillip E. Haines, Burlington County Clerk, James Beach, Camden County Clerk, Angela F. Pulvino, Cape May County Clerk, Gloria Nuto, Cumberland County Clerk, Patrick McNally, Essex County Clerk, James Hogan, Gloucester County Clerk, Janet E. Haynes, Hudson County Clerk, Dorothy K. Tirpok, Hunterdon County Clerk, Catherine DiCostanzo, Mercer County Clerk, Elaine Flynn, Middlesex County Clerk, M. Claire French, Monmouth County Clerk, Joan Bramhall, Morris County Clerk, M. Dean Haines, Ocean County Clerk, Ronni Nochimson, Passaic County Clerk, Gilda T. Gill, Salem County Clerk, R. Peter Widin, Somerset County Clerk, Erma Gormley, Sussex County Clerk, Joanne Rajoppi, Union County Clerk, Terrence D. Lee, Warren County Clerk, and Sharon Young, Director of Election Law Enforcement Commission, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued on an emergent application May 8, 2001.
Decided May 9, 2001.
*588 Brian W. McAlindin, Newark, argued the cause for appellant (Wilson, Elser, Moskowitz, Edelman & Dicker, attorneys; Mr. McAlindin, and Jennifer A. Keller, on the brief).
Mark J. Fleming, Assistant Attorney General, argued the cause for respondents Secretary of State and Director of Election Law Enforcement Commission (John J. Farmer, Jr., Attorney General, attorney;
*589 Mr. Fleming, on the brief; Michael J. Haas, Assistant Attorney General, of counsel).
Anne M. Patterson, Morristown, argued the cause for respondents Glenn R. Paulsen, George R. Gilmore and Richard H. Bagger (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Ms. Patterson, on the brief).
William E. Baroni, Jr., Cherry Hill, argued the cause for respondent-intervenor Robert Franks (Blank, Rome, Comisky & McCauley, attorneys; Mr. Baroni, on the brief).
Before Judges BAIME, WALLACE, Jr. and CARCHMAN. *586
*587 The opinion of the court was delivered by BAIME, P.J.A.D.
This case involves a challenge by Bret Schundler, a candidate for the Republican nomination for Governor, to the constitutionality of L. 2001, c. 73 (Chapter 73). Chapter 73 changes the date for the upcoming 2001 primary election from June 5 to June 26, increases public matching grants and expenditure limits for gubernatorial candidates, allows a vacancy committee to substitute a successor gubernatorial candidate for a candidate who dies or resigns as long as such substitution is certified not later than forty-eight days prior to the primary election, and permits legislative candidates who have not previously filed petitions to enter the primary race.
Appellant contended in the Law Division, and continues to argue here, that Chapter 73 is invalid because it constitutes: (1) impermissible retroactive legislation impairing his vested rights, (2) special legislation aimed at assisting respondent-intervenor Robert Franks, who was substituted for Acting Governor Donald DiFrancesco in the gubernatorial primary, and (3) a violation of his fundamental right to a level playing field in the electoral process. These arguments were considered and rejected by Judge Linda Feinberg in a thorough and well reasoned opinion. We affirm for essentially the reasons she expressed.

I.
We recount only the salient facts. Chapter 73 was passed by both houses of the Legislature and signed into law by Acting Governor Donald DiFrancesco on April 23, 2001. As we noted, the new law delayed the primary election date for the year 2001 from June 5 to June 26. The articulated objective of the statute was to adjust the primary election date to ameliorate problems caused by the later than usual delivery of the official dicennial census and the resulting legal challenges arising out of the legislative redistricting plan adopted by the New Jersey Appointment Commission. L. 2001, c. 73, § 1b. The legislative intent was to promote greater voter participation in both the gubernatorial and legislative primary elections.
In addition to postponing the primary election, the new law contains three provisions that are central to this case. First, Section 3b(2) of Chapter 73 retains the requirement under N.J.S.A. 19:23-12 that a gubernatorial candidate who withdraws from the election as a result of death or resignation may be replaced no later than forty-eight days prior to the primary election. N.J.S.A. 19:23-12 permits a vacancy committee to select a successor candidate under these circumstances by filing a certification of substitution. Because Chapter 73 alters the date of the primary election, it requires the vacancy committee to select a substitute candidate by May 9. Further, Section 5 of Chapter 73 permits a candidate substituted pursuant *590 to N.J.S.A. 19:23-12 to qualify for matching public funds by filing a timely application with the Election Law Enforcement Commission. A qualified substitute candidate is entitled to obtain the full matching grant available without subtracting the amount spent by his or her predecessor. Finally, Chapter 73 increases both the maximum amount that any qualified candidate may receive from the fund from $2,300,000 to $3,700,000, and the 2001 spending limit for any qualified candidate from $3,800,000 to $5,900,000. L. 2001, c. 73, §§ 3g and 4.
Acting Governor DiFrancesco withdrew his candidacy for the Republican nomination for governor on April 25, 2001. On the same day, the DiFrancesco vacancy committee selected former United States Representative Robert Franks as a successor candidate. Franks subsequently accepted the nomination, and the certificate of substitution papers were filed with the Division of Elections on April 26, 2001.
On April 26, 2001, appellant filed a complaint and an order to show cause seeking temporary restraints against the vacancy committee, the Secretary of State, and the county clerks of each county in New Jersey. More specifically, appellant sought to enjoin the DiFrancesco vacancy committee from designating Franks as DiFrancesco's replacement. Appellant also requested a declaratory judgment. On April 27, 2001, Judge Feinberg denied appellant's application for a temporary restraining order. On May 4, 2001, the judge conducted a hearing regarding appellant's remaining claims. Following the hearing, the judge denied appellant's application for injunctive relief and entered judgment in favor of respondents. The judge also granted Franks motion for intervention.
Appellant filed a notice of appeal that same day. Because the date for certification of candidates was looming, we accelerated this appeal. We now decide the issues presented.

II.
Certain prefatory comments are in order. We deal here with the arcane subject of New Jersey's election laws. These highly detailed statutes are not easy to digest. The reasons are several. Perhaps the most prominent cause of this complexity is the fact that these laws have evolved over the years to meet specific problems and address narrow issues. The statutes thus provide a fertile field for highly technical challenges sometimes impeding rather than advancing the essential aim of our electoral process.
We mean no disrespect to counsel. This case has been well argued on all sides. What follows is not intended to denigrate those arguments or belittle the positions they have advocated. But in responding to the parties' claims, we must not lose sight of the objective our laws are intended to achieve. Left unsaid in all these technical assertions are certain propositions so deeply embedded in our jurisprudence that they rarely find expression. Perhaps these values, which go to the very heart of our democratic system, need restating. First, the purpose of our election laws is to afford voters the maximum opportunity to make a choice. Second, our interpretation of these detailed statutes should allow the greatest scope for public participation in the electoral process as is possible consistent with the statutory language employed. And finally, we should examine and review the facts and laws in such a way as to enhance the opportunity of qualified candidates to convey their thoughts and beliefs to the people.

III.
We first consider appellant's argument that Chapter 73 applies retroactively *591 to destroy his vested rights. Appellant contends that the right of the DiFrancesco vacancy committee to certify a substitute candidate perished on April 18, 2001, forty-eight days before the originally scheduled June 5 primary date. He asserts that the Legislature's attempt to resurrect the vacancy committee's authority by extending the deadline to May 9, forty-eight days prior to the new primary date, results in a "manifest injustice."
Before examining the applicable legal principles, we note the practical ramifications flowing from appellant's contention. In practical terms, the "vested right" postulated by appellant is the right to run unopposed. That claimed right contravenes New Jersey's well settled policy in favor of contested elections and voter choice. As we emphasized earlier, the objective of our election laws is to promote "participation in the candidate-selection process, and to give voters more choices in a primary election." Lesniak v. Budzash, 133 N.J. 1, 17, 626 A.2d 1073 (1993). Were we to adopt appellant's argument, our decision would render nugatory this important public policy and reduce the primary election to a choice of one. Nothing in our jurisprudence compels that course.
Two questions inhere in the determination whether a court may properly apply a statute retroactively. Twiss v. State, Dept. of Treasury, 124 N.J. 461, 467, 591 A.2d 913 (1991). The first question is whether the Legislature intended to give the statute retroactive application. Ibid. (citing Gibbons v. Gibbons, 86 N.J. 515, 522, 432 A.2d 80 (1981)). If so, the second question is whether retroactive application is an unconstitutional interference with "vested rights" or will result in a "manifest injustice." Ibid. (citing State, Dept. of Environ. Protect. v. Ventron Corp., 94 N.J. 473, 498-99, 468 A.2d 150 (1983)).
Against this backdrop, we harbor no doubt that the Legislature intended retroactive application of Chapter 73. We, of course, acknowledge the general principle of statutory construction that favors the prospective application of legislation. Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992); Twiss v. State, Dept. of Treasury, 124 N.J. at 466, 591 A.2d 913; Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 95, 577 A.2d 1239 (1990); Gibbons v. Gibbons, 86 N.J. at 521, 432 A.2d 80; Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974); La Parre v. YMCA of the Oranges, 30 N.J. 225, 229, 152 A.2d 340 (1959). The terms of a statute will not be given retroactive effect "unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the Legislature cannot otherwise be satisfied." Kopczynski v. County of Camden, 2 N.J. 419, 424, 66 A.2d 882 (1949). Undoubtedly, this principle expresses a sound rule of statutory interpretation. It is, nonetheless, only a rule of statutory construction. All such principles "have a single purposeto aid the court in its quest for legislative intent." Rothman v. Rothman, 65 N.J. at 224, 320 A.2d 496. Where, as here, "supervening considerations clearly compel a contrary determination, this, like all other rules of statutory construction must give way." Ibid.; see also State v. Bey, 112 N.J. 45, 103, 548 A.2d 846 (1988), certif. denied, 130 N.J. 19, 611 A.2d 657 (1992); Brown v. State Dept. of Personnel, 257 N.J.Super. 84, 88-89, 607 A.2d 1354 (App.Div.1992); Carnegie Bank v. Shalleck, 256 N.J.Super. 23, 39, 606 A.2d 389 (App.Div.1992); Grippo v. Schrenell & Co., 223 N.J.Super. 154, 161-62, 538 A.2d 404 (App.Div.1988); 2 Norman J. Singer, Sutherland, Statutory Construction *592 § 41.11 at 410-11 and § 41.05 at 366 (4th ed.1986).
We thus focus our inquiry upon whether retroactive application has the effect of destroying appellant's "vested rights." A vested right has been defined as "a present fixed interest which in right reason and natural justice should be protected against arbitrary state action...." Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372, 384, 102 A.2d 587 (1954). In general, there is no vested right in the continued existence of a statute or rule of common law that precludes its change or repeal. Phillips v. Curiale, 128 N.J. at 620, 608 A.2d 895; Savarese v. New Jersey Auto. Full Ins. Underwriting Ass'n., 235 N.J.Super. 298, 309, 562 A.2d 239 (App. Div.1989). Legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. Savarese v. New Jersey Auto. Full Ins. Underwriting Ass'n, 235 N.J.Super. at 309, 562 A.2d 239. Otherwise, all laws would be set in concrete.
Retroactive legislation generally does not violate due process unless it results in particularly harsh or oppressive consequences. Twiss v. State, Dept. of Treasury, 124 N.J. at 469-70, 591 A.2d 913. In determining whether retroactive enforcement will result in such consequences, we must weigh the importance of the affected party's right against the public interest promoted by the retroactive application of the legislation. Rothman v. Rothman, 65 N.J. at 225, 320 A.2d 496.
We are satisfied that applying Chapter 73 retroactively does not deprive appellant of any vested right. Indeed, the statute merely preserves the authority of a vacancy committee to replace a candidate who dies or resigns as long as such action is taken not later than forty-eight days from the date of the primary election. That authority preexisted the enactment of Chapter 73. The only change effected by Chapter 73 is to allow a vacancy committee to make a substitution not later than forty-eight days from the newly scheduled primary election.
Further, nothing in the record indicates that retroactive application of Chapter 73 has resulted or will result in harsh or oppressive consequences violating appellant's due process rights. Appellant's expectation that the passage of the original deadline for the filing of substitution candidates limited his competition in the primary election cannot outweigh the public interest in a competitive electoral process. As we have said, New Jersey has long recognized the important public policy favoring contested elections and voter choice. Lesniak v. Budzash, 133 N.J. at 17, 626 A.2d 1073; Catania v. Haberle, 123 N.J. 438, 440, 588 A.2d 374 (1990). By allowing the DiFrancesco vacancy committee to certify a new candidate not later than forty-eight days from the date of the newly scheduled primary election, we do no more than effectuate the public policy that preexisted the Legislature's adoption of Chapter 73.
Finally, we reject appellant's argument that retroactive application of Chapter 73 imposes a "manifest injustice." "The essence of the inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively." Gibbons v. Gibbons, 86 N.J. at 523-24, 432 A.2d 80. Here, appellant contends that beginning on April 18, 2001, he was certain of the identity of his adversary, and detrimentally relied on that date in developing campaign strategy and expending financial resources. In actuality, appellant relied on this "certainty" for only five daysfrom April 18, the original filing deadline, until *593 April 23, the date the statute was enacted. This short span of time cannot be said to effect a change so "deleterious and irrevocable that it would be unfair to apply the statute retroactively." Ibid.

IV.
We turn to appellant's argument that Chapter 73 constitutes special legislation. This contention is somewhat prolix. Appellant argues that Chapter 73 extends the period for substitution of a gubernatorial candidate, while at the same time leaving intact the time frame for accepting new petitions for entering the race for governor. As such, those individuals who fill a vacancy are permitted to enter the gubernatorial race while those who want to run on their own are still barred by the original date for entry. It is asserted that this difference in treating individuals infects the constitutional validity of Chapter 73.
The New Jersey Constitution states that "[n]o general law shall embrace any provision of a private, special or local character." N.J. Const. art. IV, § 7, ¶ 7. "The purpose of the constitutional prohibition[] is to prevent abuse of the legislative process by picking favorites." Jordan v. Horsemen's Benev. and Protect. Ass'n, 90 N.J. 422, 433, 448 A.2d 462 (1982). "`The test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws.'" Phillips v. Curiale, 128 N.J. at 627, 608 A.2d 895 (quoting Township of Mahwah v. Bergen County Bd. of Taxation, 98 N.J. 268, 285, 486 A.2d 818, cert. denied, Borough of Demarest v. Mahwah Tp., 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985)). The test depends not on what or who is included in the classification but rather on what or who is excluded. Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 223, 486 A.2d 305 (1985); Jordan v. Horsemen's Benev. & Protect. Ass'n, 90 N.J. at 432, 448 A.2d 462; Roe v. Kervick, 42 N.J. 191, 233, 199 A.2d 834 (1964); Harvey v. Essex Cty. Bd. of Freeholders, 30 N.J. 381, 389, 153 A.2d 10 (1959).
In Vreeland v. Byrne, 72 N.J. 292, 298-99, 370 A.2d 825 (1977), our Supreme Court articulated the standard for determining whether legislation is "special." First, we determine the purpose underlying the bill and the bill's subject matter. Id. at 298, 370 A.2d 825. Second, we consider whether "there are persons similarly situated to those embraced within the act, who, by the terms of the act, are excluded from its operation." Id. at 299, 370 A.2d 825. Finally, we decide whether, as applied, the legislation possesses "any rational or reasonable basis relevant to the purpose and object of the act." Id. at 301, 370 A.2d 825.
Applying these principles, we are convinced that Chapter 73 does not constitute special legislation. We need not trek upon ground so thoroughly covered by Judge Feinberg. We merely stress that the law's purpose is clearly expressed. Because of fortuities beyond the Legislature's control, it was necessary to delay the primary election. The objective was to postpone New Jersey's primary for three weeks, and to make corresponding changes in the requirements imposed upon candidates. Given the extraordinary circumstances of this election year, i.e., the bitter and convoluted litigation pertaining to redistricting, we perceive no unfairness in the goal sought to be achieved. We discern no basis to penalize the Legislature for its response to exigent circumstances.
We also discern nothing unreasonable in the classifications established by Chapter 73. These classifications do not treat similarly situated persons differently.
*594 Because candidates for legislative office are subject to the fortuities involved in redistricting, the Legislature was reasonable in permitting new candidates, i.e., those who did not previously file petitions, to enter the fray. Gubernatorial candidates were not subject to the problem of redistricting. There was thus no reason to accord individuals who had not filed petitions to run for Governor an open sesame to enter the contest. Individuals who never previously filed a petition to run for Governor and candidates nominated by substitution after withdrawal of their predecessors are not similarly situated.
But even if similarly situated candidates are treated differently under Chapter 73, the statute is nonetheless constitutional. It was eminently reasonable for the Legislature to retain the forty-eight day period between filing a substitution by a vacancy committee and the adjourned primary date. As the events of the last few weeks underscore, the process of substitution is itself uncomplicated. The replacement of DiFrancesco by Franks was flawlessly transacted. In contrast-and as reflected in the earlier deadline that applied to nominating petitions even under the former lawthe filing of an original petition pursuant to N.J.S.A. 19:23-5 et seq., triggers a process that can be protracted and complex even in the absence of litigation. For example, if a candidate's nomination petition is subject to objection under N.J.S.A. 19:13-10, the officer receiving the objection can subpoena witnesses and take testimony or depositions to determine the validity of the challenge, N.J.S.A. 19:13-11, and a candidate can seek protection of his or her rights. See N.J.S.A. 19:13-12. Disputes over the authenticity of signatures and the qualifications of signers can consume weeks before the ballot can be planned or printed.
In light of these distinctions, the Legislature acted reasonably in treating gubernatorial candidates selected by vacancy committees differently than potential gubernatorial candidates who had not originally filed petitions and legislative candidates. Stated somewhat differently, it was reasonable to restrict the entry of new gubernatorial candidates to those designated by vacancy committees but allow qualified legislative candidates to enter the primary notwithstanding the fact that they did not originally file nominating petitions.
Extending the time for filing new petitions for legislative candidates, while not extending the period for gubernatorial candidates, was entirely rational in light of the purpose of the new statute. The redistricting controversy will obviously have a direct impact on the legislative candidates as their legislative districts may be altered, forcing them to drop out of the race or change their position. On the other hand, redistricting does not directly impact those candidates for the office of Governor, who are elected by the public at large. N.J. Const. art. V, § 1, ¶ 4. In sum, we conclude that the classifications created by Chapter 73 are reasonably related to achieving an appropriate legislative objective. We reject appellant's claim that the statute constitutes special legislation.

V.
Appellant argues that the financing provisions of Chapter 73 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, paragraph 1 of the New Jersey Constitution. Appellant claims that because a fundamental right is involved"free speech and equal protection in the context of an election contest"this court should apply strict scrutiny. Appellant maintains that he will be less able to effectively advocate his positions and qualifications *595 to the same number of voters as his opponent Bob Franks because, as a vacancy candidate, Franks will be entitled to spend the maximum amount of money within a relatively short period of time. As such, appellant maintains that the "inherent disparity in treatment of the gubernatorial primary election candidates directly infringes upon the voters' abilities to make an informed decision when casting their vote, and unfairly prejudices [him] and the voters at the election."
Under both the federal and state equal protection provisions, only regulation of a fundamental right or disparate treatment of a suspect class are subject to strict scrutiny. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 311-13, 96 S.Ct. 2562, 2566-67, 49 L.Ed.2d 520, 524-25 (1976); San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 16-17, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16, 33 (1973); Brown v. City of Newark, 113 N.J. 565, 573, 552 A.2d 125 (1989); Barone v. Dept. of Human Services, 107 N.J. 355, 365, 526 A.2d 1055 (1987) (citing Graham v. Richardson, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971)). If no suspect classification or fundamental right is implicated, the law is reviewed under the rational basis test. Drew Associates of NJ, LP v. Travisano, 122 N.J. 249, 258, 584 A.2d 807 (1991); Brown v. City of Newark, 113 N.J. at 573, 552 A.2d 125; Rubin v. Glaser, 83 N.J. 299, 309, 416 A.2d 382 (1980).
During oral argument appellant appeared to abandon the contention that the statute implicates a fundamental right or suspect classification. Because we are unsure of appellant's intent in that respect, we nonetheless address this contention.
Appellant fails to demonstrate that he is a member of a suspect class or that Chapter 73 infringes upon a fundamental right. Despite appellant's contentions, the public financing provisions of Chapter 73 do not create disparate classes but actually work to ensure similar treatment of gubernatorial candidates. Under existing New Jersey law, vacancy candidates are not distinguished from other candidates in relation to public financing. See N.J.S.A. 19:44A-3; N.J.A.C. 19:25-16.3; N.J.S.A. 19:23-12. Chapter 73 simply continues to treat originally nominated candidates and those appointed by a vacancy committee as equal for purposes of public funding.
Chapter 73 permits appellant to receive the same amount of funding available to all qualified candidates under the statute. Further, appellant is entitled to the additional monies that all gubernatorial candidates will receive as a result of the three week delay in the primary. Accordingly, we agree with the trial court's conclusion that Chapter 73 "ensures that all candidates compete on a level playing field."
Appellant also fails to demonstrate that Chapter 73 infringes upon a legally cognizable fundamental right. A fundamental right is a right "explicitly or implicitly guaranteed by the Constitution." San Antonio School District v. Rodriguez, 411 U.S. at 33, 93 S.Ct. at 1297, 36 L.Ed. 2d at 43. There is no doubt that every "candidate... has a First Amendment right to engage in the discussion of public issues and vigorously and tirelessly to advocate his own election and the election of other candidates." Buckley v. Valeo, 424 U.S. 1, 52, 96 S.Ct. 612, 651, 46 L.Ed.2d 659, 707 (1976); see also New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686, 700-701 (1964). However, appellant's ability to run for office or to advocate his positions has not been restricted by Chapter 73. Increasing the funding for gubernatorial candidates is rationally related to the governmental interest *596 of promoting awareness of the change in the date of the primary.
Further, permitting all candidates in the gubernatorial race to have the same ceiling on their spending is rationally related to promoting public debate on the issues and allowing candidates the same opportunity to apprise the people of their message. There is a strong public policy in New Jersey favoring the public financing of gubernatorial campaigns. Public financing tends to ensure that candidates "conduct their campaigns free from improper influence." N.J.S.A. 19:44A-27. It also permits those with "limited financial means [to] seek election." Ibid. Receipt of such funds on an accelerated basis simply ensures the substitute candidate will not be disadvantaged because of his late entry into the race.
Finally, appellant's contention that Donald DiFrancesco and Bob Franks are essentially a single interchangeable candidate is inconsistent with the facts and defies basic reason. There is no such animal as a composite candidate. Candidates are not fungible. Although candidates may share ideological values, each candidate campaigns as an individual and promotes his personal agenda. Accordingly, it is both rational and logical that a substitute candidate be afforded separate public funding from the original candidate he replaced.

VI.
We have left for last appellant's argument that Chapter 73 constitutes a bill of attainder. This contention was not advanced in the Law Division. Ordinarily, we would not consider it. We briefly comment on the argument because the theme of improper punishment permeates all of appellant's claims. More specifically, appellant asserts that Chapter 73 was adopted by the Legislature for the sole purpose of preventing him from winning the Republican gubernatorial primary election.
A bill of attainder is a legislative act which levies punishment against specified individuals or groups without judicial trial. United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1714-15, 14 L.Ed.2d 484, 492 (1965); United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1078, 90 L.Ed. 1252, 1259 (1946); In re Coruzzi, 95 N.J. 557, 579, 472 A.2d 546 (1984); In re Disciplinary Proceedings Against C. Schmidt & Sons, 79 N.J. 344, 356-57, 399 A.2d 637 (1979). Appellant contends that we would be short on realism if we failed to recognize the Legislature's actual motivation in reviewing the vacancy committee's authority to replace DiFrancesco with Franks. He asserts that whether or not the statute appears to be reasonable on its face, the Legislature's true intent was to resuscitate a dying campaign by jettisoning a candidate burdened by charges of ethical improprieties and replacing him with a candidate not similarly encumbered.
We reject that thesis. In the context of the issue presented, we hold that the proper inquiry for determining the constitutionality of Chapter 73 is whether the Legislature acted in an objectively reasonable manner. We would be myopic if we were to see only the case before us. Were we to adopt appellant's argument, practically every constitutional attack upon legislation would require the judiciary to engage in a time-consuming expedition into the state of mind of individual legislators. The judiciary cannot serve as the thought police. A judge cannot and should not be required to probe the innermost thoughts and beliefs of members of a coordinate branch. Even where motives might appear to be evident, such an analysis would still pose insurmountable burdens on the *597 judiciary. Beyond this, such an intrusive test would strain beyond reasonable limits the relations between the three branches of government. We are content to judge the constitutionality of legislation by what the legislators say, not by what they think. Ultimately, it is for the people to judge and assess the quality of those who serve and those who wish to serve.
Affirmed.