SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**State v. J.V.** **(A-95-18) (082507)**

**Argued March 3, 2020 – Decided June 11, 2020**

**Timpone, J., writing for the Court.**

In this appeal, the Court considers whether the new juvenile waiver statute, N.J.S.A. 2A:4A-26.1 (Section 26.1), applies retroactively to a juvenile who was waived to adult court, pled guilty, and was sentenced before the statute became effective.

Seventeen-year-old J.V. attempted to take a man's cellphone and, during the ensuing struggle, stabbed the victim nine times. The police charged J.V. with acts of delinquency which, if committed by an adult, would have constituted attempted murder, armed robbery, and weapons offenses.

The State filed a motion to transfer jurisdiction from the Family Part to the Superior Court to try J.V. as an adult under the then-existing, but now repealed, juvenile waiver statute, N.J.S.A. 2A:4A-26(a), under which the Legislature tasked the Attorney General (AG) with developing guidelines for prosecutors to follow when seeking to waive a juvenile to adult court. Following the AG Guidelines, the prosecutor filed a statement of reasons listing certain factors supporting waiving J.V. to adult court.

After conducting the waiver hearing, the Family Part judge granted the State's motion to transfer jurisdiction. J.V.'s counsel made an application for bail, arguing that J.V. had an IQ of 58, had been in special education classes for the majority of his life, and had attempted suicide six times while detained in the juvenile detention center. The Family Part judge denied the requested bail and entered an order waiving jurisdiction on October 23, 2013. Once in adult court, on June 17, 2015, J.V. entered guilty pleas to attempted murder and armed robbery and the State agreed to recommend concurrent eighteen-year prison terms, subject to the No Early Release Act.

On the heels of J.V.'s guilty pleas, the Legislature repealed the juvenile waiver statute, replacing it with Section 26.1. L. 2015, c. 89, §§ 1-7. It codified the AG Guidelines, mandating supplementary factors for prosecutors to consider when seeking to waive a juvenile to adult court, including: the juvenile's age and maturity, the juvenile's need for special education classes, the juvenile's mental health status, and the juvenile's history of substance abuse and/or emotional instability. N.J.S.A. 2A:4A-26.1(c)(3)(d),

1

(e), and (j). Section 26.1 was not made effective immediately, but instead, became effective on March 1, 2016. On September 18, 2015, the trial court sentenced J.V. in accordance with his plea deal.

J.V. appealed, arguing that Section 26.1 should apply to him retroactively because of the ameliorative nature of the new waiver statute and that he therefore was entitled to a new waiver hearing. The Appellate Division agreed and remanded for a new waiver hearing. The Court granted the State's petition for certification. 239 N.J. 10 (2019).

**HELD:** The language of Section 26.1 is plain and unambiguous. It became effective years after J.V. was waived to adult court. The Court concludes the Legislature intended the statute to apply prospectively to those juvenile waiver hearings conducted after the statute became effective. The statute does not apply to J.V.

1. Generally, new criminal statutes are presumed to have solely prospective application. The Court has recognized three exceptions to the presumption of prospective application of a new law to warrant affording that law retroactive application: (1) the Legislature provided for retroactivity expressly, either in the language of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to "make the statute workable or to give it the most sensible interpretation"; (2) "the statute is ameliorative or curative"; or (3) the parties' expectations warrant retroactive application. Gibbons v. Gibbons, 86 N.J. 515, 522-23 (1981). But courts look to those exceptions only in instances "where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only." Id. at 522. (pp. 12-15)

2. Based on the plain and unambiguous language of the statute, the Court finds that the Legislature intended to afford Section 26.1(c)(3) only prospective application to those juvenile waiver proceedings conducted after the statute's effective date. When enacting Section 26.1, the Legislature -- in deliberate terms -- made the statute effective seven months after its enactment. The Legislature's postponement of Section 26.1's effective date is akin to a legislative flare, signaling to the Judiciary that prospective application is intended. Because it finds the Legislature clearly intended to afford Section 26.1 prospective application only, the Court does not consider the exceptions to the presumption of prospective application of a new statute. (pp. 15-17)

3. The Court is unpersuaded by arguments that the statute's delayed implementation date is likely attributable to the need to collect and report data or to afford time to address the housing of juvenile inmates. There is nothing in Section 26.1 to support that the Legislature deliberately delayed the implementation of the statute for those reasons. The Court will not wade into the murky waters of speculation and conjecture to ascertain the Legislature's intent when the language of the statute is unequivocal. (pp. 17-18)

2

4. The Court is also not convinced by the argument that Section 26.1(c)(3) should apply retroactively given the Appellate Division's decision in State in Interest of J.F., 446 N.J. Super. 39 (App. Div. 2016). In J.F., the Family Part judge denied the State's motion to waive J.F., a fourteen-year-old juvenile accused of murder, to adult court. Id. at 41-42, 50-51. At the time of the court's decision, the Legislature had enacted Section 26.1, which raised the minimum age eligibility requirement for juvenile waivers from fourteen years old to fifteen years old, but the court applied the previous waiver statute in denying the State's motion. See id. at 41-42, 50-52. The Appellate Division upheld the Family Part judge's decision to deny the State's waiver motion but did so after finding that Section 26.1's age provision was entitled to retroactive application because it was ameliorative. Id. at 52-57. (pp. 18-20)

5. Unlike the juvenile in J.F., J.V. was waived to adult court, pled guilty, and was sentenced all before Section 26.1 became effective. In other words, when Section 26.1 became effective, J.V.'s proceedings before the juvenile and adult courts were over. The juvenile in J.F., however, was never waived to adult court and had pending proceedings in the juvenile court both before and after Section 26.1 became effective. Said another way, Section 26.1 cannot apply to J.V. because he was waived to adult court years before the statute became effective. (pp. 20-21)

6. Because J.V. cannot overcome the presumption of prospective application of Section 26.1, the Court does not address the parties' Savings Statute arguments. (p. 21)

**REVERSED and REMANDED to the Appellate Division.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.**

3

State of New Jersey,

Plaintiff-Appellant,

v.

J.V.,

Defendant-Respondent.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| March 3, 2020 | June 11, 2020 |

Carol M. Henderson, Assistant Attorney General, argued
the cause for appellant (Gurbir S. Grewal, Attorney
General, attorney; Carol M. Henderson, of counsel and
on the briefs).

Michele E. Friedman, Assistant Deputy Public Defender,
argued the cause for respondent (Joseph E. Krakora,
Public Defender, attorney; Michele E. Friedman, of
counsel and on the briefs).

John McNamara, Jr., Chief Assistant Morris County
Prosecutor, argued the cause for amicus curiae County
Prosecutors Association of New Jersey (Francis Koch,
President, attorney; John McNamara, Jr., of counsel and
on the brief).

Alexander Shalom argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation,
attorneys; Alexander Shalom and Jeanne LoCicero, on
the brief).

Barry Evenchick argued the cause for amicus curiae
Association of Criminal Defense Lawyers of New Jersey
(Pashman Stein Walder Hayden, attorneys; CJ Griffin, of
counsel and on the brief).

JUSTICE TIMPONE delivered the opinion of the Court.

In this matter, we consider whether the new juvenile waiver statute, N.J.S.A. 2A:4A-26.1 (Section 26.1), applies retroactively to a juvenile who was waived to adult court, pled guilty, and was sentenced before the statute became effective. The Appellate Division found retroactivity and concluded defendant J.V. was entitled to a new juvenile waiver hearing in light of Section 26.1.

We cannot agree. The language of Section 26.1 is plain and unambiguous. It became effective years after J.V. was waived to adult court. We conclude the Legislature intended the statute to apply prospectively to those juvenile waiver hearings conducted after the statute became effective. Clearly, the statute does not apply to J.V. Accordingly, we reverse the judgment of the Appellate Division.

I.

The facts are straightforward and undisputed.  We glean them from the juvenile waiver proceeding and J.V.'s plea colloquy.

A.

On Mother's Day in 2013, seventeen-year-old J.V. left his house armed with a kitchen knife with plans to rob someone of money or a cellphone.  He walked to a train station near his home and spotted the victim -- an unsuspecting twenty-eight-year-old man who had just been dropped off.  J.V. approached the victim and asked to use his cellphone.  The victim was initially startled but allowed J.V. to use his cellphone because J.V. was a "kid."  J.V. took the cellphone and pretended to make a phone call by pressing the phone's buttons and placing it to his ear.

After making the fake call, J.V. walked back to the victim and told him he was keeping the phone.  The victim demanded his phone back and, when J.V. refused, they began to fight for it.  During the ensuing struggle, J.V. whipped out the kitchen knife and stabbed the victim nine times, piercing and cutting the victim's neck, ear, shoulders, and the top of his head.  J.V.'s knife pierced the victim's vocal cords, causing permanent damage.  After the ninth blow, the victim fell to the ground.

3

J.V. ran from the train station with the victim's cellphone in hand. He discarded his knife in a garbage can. Witnesses at the train station observed the stabbing and called the police. An off-duty police officer was driving near the train station and overheard sirens. Turning on his radio, he heard a dispatch report of a robbery at the train station. The officer observed J.V. run past his vehicle, noting that J.V. matched the assailant's description provided by the dispatch. The officer pursued J.V. and radioed his location to other officers. Moments later, the police apprehended J.V. He was "drenched" in blood. During the arrest, J.V. blurted out he had just taken "a guy's" cellphone and discarded a knife. J.V. gave the cellphone to the officers and led them to the knife in the garbage can.

The police began interviewing J.V. at police headquarters. Upon learning J.V. was a juvenile, they notified his parents. J.V.'s father came to the police station and briefly sat in on the interview. J.V. admitted he planned to steal someone's cellphone and brought the knife with him for coercion. J.V. then detailed the assault and the stabbing.

Following the interview, the police charged J.V. with acts of delinquency which, if committed by an adult, would have constituted attempted murder, N.J.S.A. 2C:11-3(a)(1) and 2C:5-1(a)(1); armed robbery,

N.J.S.A. 2C:15-1(a)(1); unlawful possession of a knife, N.J.S.A. 2C:39-5(d); and possession of a knife for an unlawful purpose, N.J.S.A. 2C:39-4(d).

B.

A month after the stabbing, on June 4, 2013, the State filed a motion to transfer jurisdiction from the Family Part to the Superior Court to try J.V. as an adult under the then-existing, but now repealed, juvenile waiver statute, N.J.S.A. 2A:4A-26(a).

Under that waiver statute, the Legislature tasked the Attorney General (AG) with developing guidelines for prosecutors to follow when seeking to waive a juvenile to adult court. In response, the AG instructed prosecutors seeking to file a juvenile waiver motion to consider: (1) the nature of the offense; (2) the need for deterrence; (3) the effect of the waiver on the prosecution of any co-defendants; (4) the maximum sentence and length of time served; (5) the juvenile's prior record; (6) trial considerations, such as the likelihood of conviction and the potential need for a grand jury investigation; and (7) the victim's input. Office of the Attorney Gen., Juvenile Waiver Guidelines, 5-6 (Mar. 14, 2000) (AG Guidelines). In addition, the AG Guidelines directed prosecutors filing a waiver motion to include a statement of reasons addressing the prosecution's consideration and the applicability of the factors. Id. at 7.

5

Following the AG Guidelines, the prosecutor in this case filed a statement of reasons listing certain factors supporting waiving J.V. to adult court. After conducting the waiver hearing, the Family Part judge granted the State's motion to transfer jurisdiction. J.V.'s counsel made an application for bail, arguing that J.V. had an IQ of 58, had been in special education classes for the majority of his life, and had attempted suicide six times while detained in the juvenile detention center. The Family Part judge denied the requested bail and entered an order waiving jurisdiction on October 23, 2013.

Thereafter, a grand jury indicted J.V. for attempted murder, armed robbery, and weapons offenses. J.V.'s counsel requested an evaluation to determine whether J.V. was competent to stand trial. After a three-day hearing, the trial court found J.V. competent to stand trial but noted there was evidence that he was mentally impaired.

Once in adult court, on June 17, 2015, J.V. entered guilty pleas to attempted murder and armed robbery. In exchange, the State agreed to recommend concurrent eighteen-year prison terms, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2.

On the heels of J.V.'s guilty pleas, the Legislature repealed the juvenile waiver statute, replacing it with Section 26.1. L. 2015, c. 89, §§ 1-7. It codified the AG Guidelines, mandating supplementary factors for prosecutors

6

to consider when seeking to waive a juvenile to adult court. Those factors include: the juvenile's age and maturity, the juvenile's need for special education classes, the juvenile's mental health status, and the juvenile's history of substance abuse and/or emotional instability. N.J.S.A. 2A:4A-26.1(c)(3)(d), (e), and (j). Section 26.1 was not made effective immediately, but instead, became effective on March 1, 2016. L. 2015, c. 89, § 7.

On September 18, 2015, the trial court sentenced J.V. in accordance with his plea deal. That sentencing occurred well before the effective date of the new statute.

C.

J.V. appealed, challenging both the Family Part judge's ruling to waive jurisdiction and his sentence. He contended he was entitled to a new waiver hearing in light of Section 26.1. Relying on the Appellate Division's decision in State in Interest of J.F., 446 N.J. Super. 39 (App. Div. 2016), J.V. argued that Section 26.1 should apply to him retroactively because of the ameliorative nature of the new waiver statute. J.V. speculated that had the prosecutor considered the new waiver factors under Section 26.1(c)(3), the prosecutor may not have sought to waive him to adult court. To the extent Section 26.1(c)(3) does not apply retroactively, J.V. claimed he was still entitled to a new waiver hearing because the prosecution abused its discretion in analyzing

7

the factors under the AG Guidelines. He also argued that his sentence was excessive.

The Appellate Division agreed with J.V.'s Section 26.1 arguments. Given its decision in J.F., the Appellate Division concluded "[t]he waiver statute is ameliorative and thus subject to retroactive application." The court reasoned that the new waiver factors under Section 26.1(c)(3) "may affect the severity of the outcome for the juvenile." The court further found that J.V. was entitled to a new waiver hearing under the new waiver statute applying Section 26.1's provisions because he was sentenced after the "enactment of the more lenient waiver statute." The Appellate Division took note that under the new statute, prosecutors must now consider a juvenile's mental disability but that such an evaluation was not mandated under the repealed statute or under the AG Guidelines. The Appellate Division remanded for a new waiver hearing in light of Section 26.1.

Because it ruled in his favor, the Appellate Division considered neither J.V.'s additional argument that the prosecution abused its discretion in analyzing the waiver factors under the AG Guidelines nor J.V.'s excessive sentencing claim.

This Court granted certification, 239 N.J. 10 (2019), and permitted the County Prosecutors Association of New Jersey, the American Civil Liberties

Union of New Jersey (ACLU), and the Association of Criminal Defense Lawyers of New Jersey (ACDL) to participate as friends of the Court.

## II.

### A.

At the time the State moved to waive J.V. to adult court, N.J.S.A. 2A:4A-26 governed juvenile waiver proceedings. Under that statute, the Legislature directed the AG to develop and disseminate to the county prosecutors "those guidelines or directives deemed necessary or appropriate to ensure uniform application" of the juvenile waiver law. N.J.S.A. 2A:4A-26(f) (repealed). Following the directive, the AG promulgated the Guidelines, identifying several factors (previously discussed) that prosecutors must consider when moving to waive a juvenile to adult court. AG Guidelines at 5-6. The AG Guidelines also directed prosecutors to file a statement of reasons setting forth the prosecution's consideration of the waiver factors. Id. at 7.

In State v. J.M., we ruled that prosecutors must file the statement of reasons as part of the State's waiver motion so judges could review the prosecution's reasoning in determining whether its decision to seek waiver was arbitrary. 182 N.J. 402, 419 (2005). Then, in State in Interest of V.A., we directed courts to review for abuse of discretion a prosecutor's decision to waive a juvenile to adult court. 212 N.J. 1, 8 (2012).

9

In August 2015, the Legislature repealed the juvenile waiver statute and enacted Section 26.1. L. 2015, c. 89, §§ 1-7. Section 26.1 codified the AG Guidelines and advanced additional factors prosecutors must consider when seeking to waive a juvenile to adult court. See N.J.S.A. 2A:4A-26.1(c)(3); see also State in Interest of N.H., 226 N.J. 242, 252 (2016) (noting the addition of factors under the new statute). In addition to the factors under the AG Guidelines, Section 26.1(c)(3) now requires prosecutors to consider the "[a]ge and maturity of the juvenile," "[a]ny classification that the juvenile is eligible for special education," the juvenile's involvement with "child welfare agencies," and "[e]vidence of mental health concerns, substance abuse, or emotional instability of the juvenile." N.J.S.A. 2A:4A-26.1(c)(3)(d), (e), (i), and (j). Section 26.1 also codified this Court's holding in J.M. requiring prosecutors to file a statement of reasons addressing the waiver factors so courts may determine whether "the prosecutor abused his [or her] discretion in considering [those] factors in deciding whether to seek a waiver." See N.J.S.A. 2A:4A-26.1(a), (b), and (c)(3); see also N.H., 226 N.J. at 251 (noting Section 26.1's "requirements are consistent with J.M.").

When enacting Section 26.1, the Legislature declared that it "shall take effect on the first day of the seventh month following enactment." L. 2015, c. 89, § 7. Accordingly, Section 26.1 became effective on March 1, 2016. Ibid.

In N.H., we considered the State's discovery obligations to juveniles when the State seeks to waive a juvenile to adult court. 226 N.J. at 245. In that case, the State had charged the juvenile with murder and weapons offenses and sought to waive him to adult court for trial. Id. at 246. Before the waiver hearing in N.H., the juvenile sought full discovery from the prosecutor, which the Family Part judge granted. Id. at 247. The State appealed that ruling and, by the time the appeal reached this Court, Section 26.1 had become effective. Id. at 247, 249. We ultimately concluded that Section 26.1 did not address discovery in juvenile cases. Id. at 253. Given "the critical nature of juvenile waiver proceedings, and to ensure fairness" to juveniles, we invoked our supervisory authority and imposed an obligation on the State to provide full discovery to juveniles when it seeks to waive a juvenile to adult court. Id. at 256.

In rendering our decision, we extensively reviewed the juvenile waiver statutory scheme. See id. at 248-52. Based on a comparison of the old and new waiver statutes, we concluded the "[s]tatutory revisions about the process for the waiver decision do not alter existing law in a material way." Id. at 249. Turning to the new juvenile waiver factors under Section 26.1(c)(3), we noted with approval the new waiver law "adopted parts of the [AG] Guidelines and case law." Id. at 250. We also observed that Section 26.1(c)(3)'s factors

11

"encompass[ed] and expand[ed] upon the factors listed in the [AG] Guidelines." Id. at 252. Given the similarities between Section 26.1 and the old waiver statute, we opted not to "conduct a full-blown retroactivity analysis." Id. at 249.

B.

The preceding extensive history of the evolution of juvenile waiver to adult court paves the way for the decision in the matter. The sole question before this Court is whether Section 26.1(c)(3) applies retroactively to J.V. -- a juvenile who was waived to adult court, pled guilty, and was sentenced under the older statute well before the new waiver statute became effective. The Appellate Division found the new statute to be retroactive and ordered a new waiver hearing.

We review that determination anew -- without affording any deference to the Appellate Division's decision -- because whether a statute applies retroactively "is a purely legal question of statutory interpretation." Johnson v. Roselle EZ Quick LLC, 226 N.J. 370, 386 (2016); see also Garden State Check Cashing Serv., Inc. v. Dep't of Banking & Ins., 237 N.J. 482, 489 (2019) ("We . . . apply de novo review to issues of statutory interpretation.").

Without question, "[t]he overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to

12

that intent.'" State v. S.B., 230 N.J. 62, 67 (2017) (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). To determine the Legislature's intent, we look to the statute's language and give those terms their plain and ordinary meaning, DiProspero v. Penn, 183 N.J. 477, 492 (2005), because "the best indicator of that intent is the plain language chosen by the Legislature," Johnson, 226 N.J. at 386 (quoting Cashin v. Bello, 223 N.J. 328, 335 (2015)).

If, based on a plain and ordinary reading of the statute, the statutory terms are clear and unambiguous, then the interpretative process ends, and we "apply the law as written." Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012). "A court may neither rewrite a plainly[ ]written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language." O'Connell v. State, 171 N.J. 484, 488 (2002). If, however, the statutory text is ambiguous, we may resort to "extrinsic interpretative aids, including legislative history," to determine the statute's meaning. S.B., 230 N.J. at 68.

"When the Legislature does not clearly express its intent to give a statute prospective application, a court must determine whether to apply the statute retroactively." Twiss v. Dep't of Treasury, 124 N.J. 461, 467 (1991). Generally, new criminal statutes are presumed to have solely prospective application. See, e.g., State v. Parolin, 171 N.J. 223, 233 (2002) ("[T]he

13

presumption [is] that criminal legislation is to have prospective effect . . . .”);

accord James v. N.J. Mfrs. Ins. Co., 216 N.J. 552, 556 (2014) (“The law favors

prospective application of a new statute.”). We apply a presumption of

prospective application for newly enacted statutes because “retroactive

application of new laws involves a high risk of being unfair.” Oberhand v.

Dir., Div. of Taxation, 193 N.J. 558, 570 (2008) (quoting Gibbons v. Gibbons,

86 N.J. 515, 522 (1981)).

To overcome the presumption of prospective application, we must find

the “Legislature clearly intended a retrospective application” of the statute

through its use of words “so clear, strong, and imperative that no . . . meaning

can be ascribed to them” other than to apply the statute retroactively.

Weinstein v. Inv’rs Sav. & Loan Ass’n, 154 N.J. Super. 164, 167 (App. Div.

1977). Courts apply a newly enacted statute retroactively only if “the

Legislature intended to give the statute retroactive application” and

“retroactive application of that statute will [not] result in either an

unconstitutional interference with vested rights or a manifest injustice.”

James, 216 N.J. at 563 (quoting In re D.C., 146 N.J. 31, 50 (1996)).

We have recognized three exceptions to the presumption of prospective

application of a new law to warrant affording that law retroactive application:

(1) the Legislature provided for retroactivity expressly, either in the language

14

of the statute itself or its legislative history, or implicitly, by requiring retroactive effect to "make the statute workable or to give it the most sensible interpretation"; (2) "the statute is ameliorative or curative"; or (3) the parties' expectations warrant retroactive application. Gibbons, 86 N.J. at 522-23. But we look to those exceptions only in instances "where there is no clear expression of intent by the Legislature that the statute is to be prospectively applied only." Id. at 522.

### III.

### A.

Against that landscape, we conclude the Appellate Division erred by applying Section 26.1(c)(3) retroactively to J.V. Based on the plain and unambiguous language of the statute, we find the Legislature intended to afford Section 26.1(c)(3) only prospective application to those juvenile waiver proceedings conducted after the statute's effective date.

When enacting Section 26.1, the Legislature -- in deliberate terms -- made the statute effective seven months after its enactment. L. 2015, c. 89, § 7 ("This act shall take effect on the first day of the seventh month following enactment."). The Legislature's postponement of Section 26.1's effective date is clear evidence that the Legislature intended the statute to apply prospectively only. See, e.g., Twiss, 124 N.J. at 468 (explaining a statute's

15

"postponed effective date" is evidence of the Legislature's intent that the statute applies prospectively only).

Moreover, "the Legislature is presumed to be aware of judicial construction of its enactments." DiProspero, 183 N.J. at 494 (quoting N.J. Democratic Party, Inc. v. Samson, 175 N.J. 178, 195 n.6 (2002)). We assume the Legislature knew that courts would construe Section 26.1's postponed effective date only to allow prospective application of the statute. "[H]ad the Legislature intended an earlier date for the law to take effect, that intention could have been made plain in the very section directing when the law would become effective." James, 216 N.J. at 568. Instead, the Legislature explicitly made the statute effective after its enactment date, which is "akin to a legislative flare, signaling to the judiciary that prospective application is intended." Olkusz v. Brown, 401 N.J. Super. 496, 502 (App. Div. 2008); accord Twiss, 124 N.J. at 468.

Because we find the Legislature clearly intended to afford Section 26.1 prospective application only, we need not consider the exceptions to the presumption of prospective application of a new statute. See Gibbons, 86 N.J. at 522-23; see also Twiss, 124 N.J. at 467 (explaining that a court will only conduct a retroactivity analysis "[w]hen the Legislature does not clearly express its intent to give a statute prospective application"). Since J.V. was

16

waived to adult court, pled guilty, and was sentenced before Section 26.1 became effective, the statute does not apply to him.

J.V. and supportive amici, the ACLU and the ACDL, argue that Section 26.1's postponed effective date does not evidence the Legislature's intent to afford the statute prospective application only. They contend the statute's delayed implementation date is likely attributable to Section 26.1's requirement that the AG and Juvenile Justice Commission (JJC) collect and report data on juvenile waivers. See N.J.S.A. 2A:4A-26.1(g); see also J.F., 446 N.J. Super. at 59 n.14 (presuming that Section 26.1's postponed effective date "was likely necessitated by the [AG's] need to prepare guidelines and the requirement that the JJC establish a program to gather and report data"). At oral argument, the ACLU suggested the Legislature delayed the implementation of Section 26.1 to afford the Department of Corrections and the JJC time to address the housing of juvenile inmates given the statute's provisions allowing convicted, waived-up juveniles to serve out their sentences in juvenile detention centers. See N.J.S.A. 2A:4A-26.1(f).

We are unpersuaded by those speculative arguments. There is nothing in Section 26.1 to support that the Legislature deliberately delayed the implementation of the statute for the reasons advanced by J.V. and amici. We will not wade into the murky waters of speculation and conjecture to ascertain

17

the Legislature's intent when the language of the statute is unequivocal. See O'Connell, 171 N.J. at 488 (stating a court will not "presume that the Legislature intended something other than that expressed by way of the plain language"). The plain and unambiguous language of Section 26.1 keeps us ashore because the statute's text is "the best indicator" of the Legislature's intent, Johnson, 226 N.J. at 386 (quoting Cashin, 223 N.J. at 335), and the statute's postponed effective date provides clear evidence that the Legislature intended to apply the statute prospectively only, see Twiss, 124 N.J. at 468. "[W]e need delve no deeper than the act's literal terms to divine the Legislature's intent." O'Connell, 171 N.J. at 488 (alteration in original) (quoting State v. Butler, 89 N.J. 220, 226 (1982)).

J.V. and his supportive amici also contend Section 26.1(c)(3) should apply retroactively given the Appellate Division's decision in J.F. Again, we are not convinced.

In J.F., the Appellate Division ruled that Section 26.1's new age-eligibility provision was entitled to retroactive application. 446 N.J. Super. at 55-57. There, the State had filed an interlocutory appeal to challenge the Family Part judge's refusal to waive a fourteen-year-old juvenile accused of murder to adult court. Id. at 41-42. At the time of the State's waiver motion, N.J.S.A. 2A:4A-26 governed waiver proceedings and the statute permitted the

18

State to seek the involuntary waiver of a fourteen-year-old juvenile. Id. at 43, 52-53.

Following a hearing, the Family Part judge denied the State's application, finding that the juvenile had met his burden under the previous waiver statute to prove the probability of his rehabilitation, and that probability of rehabilitation outweighed the State's reasons for waiver. Id. at 42, 50-51. At the time of the court's decision, the Legislature had enacted Section 26.1, which raised the minimum age eligibility requirement for juvenile waivers from fourteen years old to fifteen years old. See id. at 52; see also N.J.S.A. 2A:4A-26.1(c)(1). Under Section 26.1, not in effect at the time, the juvenile at issue in J.F. would not have been eligible for waiver because he was fourteen years old at the time of his offenses. Id. at 53. The Family Part judge acknowledged the enactment of Section 26.1, but did not apply the statute and denied the State's juvenile waiver motion. Id. at 52.

Following the State's appeal, the Appellate Division -- on its own initiative -- asked the parties to provide briefing on whether Section 26.1 was entitled to retroactive application. Id. at 42. After that briefing, the Appellate Division upheld the Family Part judge's decision to deny the State's waiver motion but did so after conducting a retroactivity analysis of Section 26.1's new age provision and finding that it was entitled to retroactive application.

19

<u>Id.</u> at 52-57. According to the Appellate Division, Section 26.1(c)(1) is an ameliorative statute because it "was intended to ameliorate the punitive sentencing previously meted out to adolescent offenders after waiver . . . [and] to address the treatment needs of children." <u>Id.</u> at 55. The Appellate Division found that in Section 26.1 "[t]he Legislature, in raising the age requirement for waiver by one year, determined that children who commit offenses when under the age of fifteen should never be waived up to face adult penalties." <u>Id.</u> at 56.

Unlike the juvenile in <u>J.F.</u>, J.V. was waived to adult court, pled guilty, and was sentenced all before Section 26.1 became effective. In other words, when Section 26.1 became effective, J.V.'s proceedings before the juvenile and adult courts were over. The juvenile in <u>J.F.</u>, however, was never waived to adult court and had pending proceedings in the juvenile court both before and after Section 26.1 became effective. Said another way, Section 26.1 cannot apply to J.V. because he was waived to adult court years before the statute became effective. Cf. <u>State v. Bass</u>, 457 N.J. Super. 1, 11-12 (App. Div. 2018) (refusing to apply Section 26.1 retroactively because "the waiver law was not only the same at the time defendant committed the offense, but also at the time of his waiver, conviction, and sentencing" and the court found "no evidence the Legislature intended [Section 26.1] to reach concluded cases

20

which have already passed through the proverbial 'pipeline'"), <u>certif. denied</u>, 238 N.J. 364 (2019).

Our decision today rests solely on the facts before us. We hold that a juvenile who was waived to adult court, pled guilty, and was sentenced long before Section 26.1 became effective cannot claim the benefit of the new juvenile waiver statute. The Appellate Division's contrary ruling in this case contravenes the plain and unambiguous language of Section 26.1, and so that decision cannot stand.

### B.

Because we conclude J.V. cannot overcome the presumption of prospective application of Section 26.1, we need not address the parties' Savings Statute arguments.

### IV.

For the above reasons, we reverse the judgment of the Appellate Division and remand this matter to that court for consideration of J.V.'s remaining arguments.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE TIMPONE's opinion.

21